**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**CLIFFORD BRAXTON,**

        **Plaintiff**

**v.**

**ERIE COUNTY DISTRICT ATTORNEY,**        **06-CV-311A(Sr)**

        **Defendant**

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #8.

Currently before the Court is defendant's motion (Dkt. #6), to dismiss the complaint and amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), and plaintiff's motion (Dkt. #13), to file a second amended complaint.  For the following reasons, it is recommended that defendant's motion be granted in part and plaintiff's motion be granted.

## BACKGROUND

Plaintiff, Clifford Braxton, Sr., has been employed with the Erie County District Attorney's Office since 1993 and is currently employed as a Confidential

Criminal Investigator.  Dkt. #6-2, p.2.  He alleges that on or about August 2, 2005, he

discovered that three white individuals with less seniority had been promoted to the

position of Chief Confidential Criminal Investigator and were making more money than

plaintiff.  Dkt. #6-2, p.2.  Plaintiff filed a Charge of Discrimination with the New York

State Division of Human Rights ("NYSDHR"), on December 15, 2005, alleging that the

Erie County District Attorney's Office discriminated against him because of his race

when he was not awarded the position of Chief Confidential Criminal Investigator.  Dkt.

#6-2, p.2.[1]

The Charge of Discrimination was presented to the EEOC, which issued a

Dismissal and Notice of Suit Rights on February 15, 2006.  Dkt. #1, p.6; Dkt #6-2, p.2.

In support of its determination, the EEOC informed plaintiff that

The EEOC has a 300-day timely limit, which means we can

---

[1] Plaintiff provided the following particulars to his Charge of Discrimination:

> I began working for the above named Respondent on or about
> July 12, 1993.  My latest position was that of Confidential Criminal
> Investigator.
>
> During the course of my employment, specifically on or about
> August 2, 2005, I discovered that three white individuals with less
> seniority[] had been promoted to the position of Chief Confidential
> Criminal Investigator.  I also discovered that these individuals
> were making more money than myself.
>
> I believe the Respondent discriminated against me when I was not
> awarded the position because of my race/black.  This is in willful
> violation of title VII of the Civil Rights Act or 1964 as amended.
>
> I do not wish to participate in mediation.

Dkt. #6-2.

> only investigate allegations of discrimination that occurred within the last 300 days from the date a charge is filed.  The investigation revealed[] that the three persons who were selected for the position over you[] were all selected well over 300 days ago, specifically May 24, 2001, November 4, 2002 and September 25, 2003.
>
> Your charge was not received in this office until December 15, 2005 which was day 812 from the date the last person was promoted.  Furthermore, it is unlikely that you were just recently made aware that these individuals had received the position over yourself.

Dkt. #1, p.7.

Plaintiff commenced this action, *pro se*, on May 15, 2006, alleging a violation of Title VII of the Civil Rights Act of 1964 based upon his race and color.  Dkt. #1, pp.1 & 4.  Plaintiff complained that the defendant failed to promote him, harassed him on the basis of unequal terms and conditions of employment and retaliated against him because he complained about discrimination or harassment.  Dkt. #1, p.3.  Plaintiff set forth the following facts:

> Fail to promote on a seniority basis, also give preference to other Investigators pertaining to [illegible] assignments, as well as humiliation by other employees, demeaning workplace condition.  Also did not agree with the union contract on discrimination[.] Also did not receive 207-Benefits while injured in the line of duty.

Dkt. #1, p.4. Plaintiff filed an amended complaint on June 2, 2006, alleging the following facts:

> A)   Denial of promotional opportunities
> B)   Discrimination in Job Assignments – preferation [sic] to white investigators
> C)   Intentional humiliation and demeaning work area assignments
> D)   Denial of contractual benefits

Dkt. #3, p.4.  The Court determined that the original complaint and amended complaint

should be merged and treated as an integrated complaint.  Dkt. #5.

The defendant moved to dismiss the integrated complaint on the ground

that the failure to promote claim is barred by the statute of limitations and the additional

claims were never presented to the EEOC.  Dkt. #7, pp.4 & 6.  Counsel appeared for

plaintiff on January 12, 2007.  Dkt. #12.  On the same date, plaintiff's attorney filed a

motion to amend the integrated complaint to add a cause of action pursuant to 42

U.S.C. § 1981.  Dkt. #13-2, ¶ 3.

In opposition to the motion to dismiss, plaintiff submitted an affirmation

setting forth  the following recitation of facts:

> 4.     On August 5, 2005, I received a memorandum from
> Amy Hughes, Deputy for Administration concerning a
> mandatory meeting for all investigators.  At this meeting, I
> found out that three white individuals with less seniority than
> me had been made Chief Confidential Criminal
> Investigators.  These employees, John Cleary, Dan Dill and
> Jack Vickerd, were respectively promoted on May 24, 2001;
> November 4, 2002; and September 25, 2003.
>
> 5.     Prior to this meeting, I was unaware that these
> promotions had taken place[].  I had minimal contacts with
> these individuals because I worked in a different building
> then [sic] them and we rarely had staff meetings attended by
> all investigators.
>
> 6.     Contrary to the collective bargaining agreement
> between the county and my union, none of these positions
> had been posted in the workplace, nor were the vacancies
> otherwise announced.  I did not receive any announcement
> of these appointments at the time they were made.  During
> the period between each appointment and August 5, 2005, I
> was not informed in a written or verbal manner, that they
> were Chief Confidential Criminal Investigators.

> 7.    At and after the August 5, 2005 meeting, I also
> discovered that these three individuals had been given
> better work assignments than me and had been given
> government cars.

Dkt. #13-3.

In response, Amy Hughes, Deputy for Administration at the Erie County District Attorney's Office, submitted a declaration that the Chief Confidential Investigator "position was not a competitive class position, accordingly there was no civil service list for the position." Dkt. #17, ¶ 13. Ms. Hughes also declares that the vacancies for each of the three positions were "posted in the Erie County Personnel Department, City of Buffalo Police Department and New York State Department of Labor." Dkt. #17, ¶ 15. Ms. Hughes states that Cleary, Dill and Vickard were hired in accordance with Section 211 of the New York State Retirement and Social Security Law, which permitted them to work full time without penalty to their existing retirement after the Erie County District Attorney's Office demonstrated that it was unable to recruit qualified candidates for the position. Dkt. #17, ¶¶ 14-15.

Ms. Hughes notes that the entire staff of the Erie County District Attorney's Office received an updated copy of the organization chart for the office, which includes the titles of each employee, following every change in staff. Dkt. #17, ¶ 17. Attached to the declaration are organizational charts reflecting the promotion of Mr. Dill, Mr Cleary and Mr. Vickerd to Chief Confidential Investigator as of November 4, 2002, August 4, 2003, and February 9, 2004, respectively. Dkt. #17, ¶¶ 18-22 & Exh. B. Ms. Hughes also attached copies of the personnel lists containing staff names, positions, addresses and phone numbers which were purportedly distributed to the entire staff at least yearly. Dkt. #17, ¶¶ 7-9 & Exh. A. These listings indicate that Mr.

Clearly's promotion to Chief Confidential Investigator was reflected on the personnel list generated on October 1, 2001, Mr. Dill's promotion was reflected as of December 2, 2002, and Mr. Vickerd's promotion was reflected as of November 3, 2003.  Dkt. #17, ¶¶ 10-12.

In reply, plaintiff submitted the affidavit of Roseanne Aquino, former Operating Communications Coordinator for the Erie County District Attorney's Office, who affirmed that during her employment with the Erie County District Attorney's Office, which concluded on December 31, 2001,

> Jobs were posted by the Deputy for Administration.
> However, jobs were not consistently posted.  I routinely
> examined the board to view those jobs that were posted.
> Frequently, I noticed that a person would leave the
> Department and the position would be subsequently filled,
> yet the position had never been posted.

Dkt. #21, ¶ 4.  Ms. Aquino also affirmed that personnel lists and organization charts "were not routinely distributed to all department employees" and that plaintiff would not have had a need for either the personnel lists or organization charts "because he was routinely given another phone list, containing employee names and extension numbers, without their full titles."  Dkt. #21, ¶¶ 3-7.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a
> plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and

> conclusions, and a formulaic recitation of the elements of a
> cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level
> on the assumption that all the allegations in the complaint
> are true.

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 167 L.Ed.2d 929, 940 (2007) (internal

citations omitted).  In setting forth this standard, the Supreme Court disavowed an often

quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Id.* at

943, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Supreme Court

explained that

> This "no set of facts" language can be read in isolation as
> saying that any statement revealing the theory of the claim
> will suffice unless its factual impossibility may be shown from
> the face of the pleadings; and the Court of Appeals [for the
> Second Circuit] appears to have read *Conley* in some such
> way when formulating its understanding of the proper
> pleading standard.

*Id.* at 943.  The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of
> facts," a wholly conclusory statement of claim would survive
> a motion to dismiss whenever the pleadings left open the
> possibility that a plaintiff might later establish some "set of
> [undisclosed] facts" to support recovery.  So here, the Court
> of Appeals specifically found the prospect of unearthing
> direct evidence of conspiracy sufficient to preclude
> dismissal, even though the complaint does not set forth a
> single fact in a context that suggests an agreement.  It
> seems fair to say that this approach to pleading would
> dispense with any showing of a "'reasonably founded hope'"
> that a plaintiff would be able to make a case; Mr. Micawber's
> optimism would be enough.

*Id.* at 944 (internal citations omitted).  The Supreme Court then limited *Conley* to

describing "the breadth of opportunity to prove what an adequate complaint claims, not

the minimum standard of adequate pleading to govern a complaint's survival."  *Id.* at

945.  The Supreme Court reiterated that it did "not require heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on it face."  *Id.*

at 949.


The Court of Appeals for the Second Circuit recognized that *Bell Atlantic*

*Corp. v. Twombly* has created "[c]onsiderable uncertainty concerning the standard for

assessing the adequacy of pleadings."  *Iqbal v. Hasty*, 490 F.3d 143, 155

(2d Cir. 2007).  "After careful consideration" of that decision, the Court of Appeals has

concluded that "the Court is not requiring a universal standard of heightened fact

pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible."  *Id.* at 157-58.


**Timeliness of Charge of Discrimination**

Defendant argues that plaintiff's failure to promote claim is barred by the

statute of limitations because the most recent promotion occurred on September 25,

2003, which is 812 days before plaintiff filed a claim with the NYSDHR.  Dkt. #7, pp.5-6.


Plaintiff responds that he filed his Charge of Discrimination within 300

days of discovering the promotions.  Dkt. #14, p.5.


"A plaintiff may bring a claim under Title VII only for acts of discrimination

that occurred within the statutory period set by 42 U.S.C. § 2000-5(e)(1).  *Patterson v.*

*County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004).  "As a general rule, a

complainant must file a discrimination charge with the EEOC within 180 days of the

occurrence of the alleged unlawful employment practice." *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 110 (1988), *citing* 42 U.S.C. § 2000e-5(e).  "If a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is extended to 300 days."  *Id.*  Since plaintiff initially filed his complaint with the NYSDHR, an agency with such authority, he had 300 days to file his complaint with the EEOC. *See Ford v. Bernard Fineson Dev. Ctr*, 81 F.3d 304, 307 (2d Cir. 1996).  "When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred." *Butts v. City of New York Dep't of Housing Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care*, 163 F.3d 684 (2d Cir. 1998).

In *National Railroad Passenger Corporation v. Morgan*, the United States Supreme Court stated that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" 536 U.S. 101, 110 (2002) .  However, the Supreme Court also recognized that although discrete discriminatory acts such as termination, failure to promote, denial of transfer or refusal to hire, are generally "easy to identify," there "may be circumstances where it will be difficult to determine when the time period" for discrete acts of discrimination

> should begin to run.  One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered.

*National Railroad Corp. v. Morgan*, 536 U.S. 101, 114 n.7 (2002).  The United States Supreme Court subsequently reiterated, without resolving, the question of "whether Title VII suits are amenable to a discovery rule." *Ledbetter v. Goodyear Tire*, __ U.S. __, 127 S.Ct. 2162, 2187 n.10 (2007), *citing  Morgan*, 536 U.S. at 114, n.7.   However,

the Court of Appeals for the Second Circuit has stated, albeit under different factual circumstances,[2] that "[i]t has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."  *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000).  In *Cornwell v. Robinson*, the Court of Appeals stated, under distinguishable factual circumstances,[3]  that "a claim generally accrues once the plaintiff knows or has reason to know of the injury which is the basis of his action."  23 F.3d 694, 703 (2d Cir. 1994) (internal quotation omitted).

The Court believes that there is no need to resolve the question of whether a discovery rule is applicable to plaintiff's claim unless and until the Court first resolves the question of when plaintiff could have reasonably discovered his injury. Moreover, the Court declines to convert the motion to dismiss to a motion for summary judgment[4] so as to resolve the question of when plaintiff should reasonably have discovered the promotions as it appears to the Court that this question is best addressed upon a more developed factual record following discovery.

---

[2] The *Flaherty* Court determined that a claim of constructive discharge accrues upon the employee's  notice to her employer of her intention to resign.

[3] The *Cornwell* Court was considering the timeliness of a continuing violation claim.

[4] Where, as here, "both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56." *Carruthers v. Flaum*, 388 F. Supp.2d 360, 379 (S.D.N.Y. 2005); see *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss.").

**Equitable Tolling**

Plaintiff argues that the statute of limitations should be tolled, as a matter of equity, because plaintiff did not discover the allegedly discriminatory promotions until August 5, 2005.  Dkt. #14, p.5.

"[T]he statutory time limits applicable to lawsuits . . . under Title VII are subject to equitable tolling."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990). However, equitable tolling is only appropriate in rare and exceptional circumstances where a party is prevented in some extraordinary way from exercising his rights.  *Zerilli-Edelglass v. New York city Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).  For example, "equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period; where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant; or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion."  *Id.* (internal quotations and citations omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.  *Id.* at 80-81 (internal quotation omitted).   The burden of proving that equitable tolling is appropriate rests on the plaintiff.  *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

As an initial matter, the Court notes that this argument may become moot should the Court determine that plaintiff's cause of action accrued upon his discovery of the promotions on August 2, 2005.  As a result, the Court is of the opinion that the

equitable tolling argument should not be resolved at this time, but should be considered, if necessary, after plaintiff has had the opportunity to discover whether defendant engaged in misleading conduct in the posting and announcing of the positions and defendant has had the opportunity to develop the factual record with respect to plaintiff's reasonable diligence in seeking promotion to the position of Chief Confidential Criminal Investigator or discovering the promotions of John Cleary, Dan Dill and Jack Vickerd.  As a result, it is recommended that defendant's motion to dismiss the cause of action alleging failure to promote as barred by the statute of limitations be **DENIED WITHOUT PREJUDICE**.

**Failure to Exhaust Administrative Remedies**

Defendant argues that plaintiff's claim of discrimination in job assignments, intentional humiliation and demeaning work area assignments and denial of contractual benefits cannot proceed because they were not presented to the EEOC. Dkt. #7, p.6.

Plaintiff responds that these claims "clearly flow from and are reasonably related to a failure to promote."  Dkt. #14, p.7.

Defendant replies that these claims must be dismissed because plaintiff was aware of them before he filed his claim with the EEOC and because they are separate discrete acts which cannot be deemed to flow from the alleged failure to promote.  Dkt. #18, p.7.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the

EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency."  *Id., quoting, Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Id., quoting Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001), *cert. denied*, 536 U.S. 922 (2002).[5]  "[T]he factual allegations in the EEOC charge, rather than any legal theories stated therein, should be the focus for determining whether a cause of action is reasonably related to the plaintiff's EEOC charge."  *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1026 (S.D.N.Y. 1993); *see Whitlow v. Visiting Nurse Assoc. of W.N.Y.*, 2005 WL 2126463, at * 7 (W.D.N.Y. Sept. 1, 2005); *Cooper v. Xerox Corp*, 994 F. Supp. 429, 432 (W.D.N.Y. 1998).

        In the instant case, plaintiff alerted the EEOC, by way of a Charge of Discrimination filed with the NYSDHR, that three individuals with less seniority had been promoted to the position of Chief Confidential Criminal Investigator and were making more money than plaintiff.  Dkt. #6-2.  As nothing in that very specific allegation would prompt the EEOC to investigate whether white investigators were receiving preferential job assignments or whether plaintiff was being denied contractual benefits because of his race, plaintiff has failed to exhaust administrative remedies with respect to these

---

        [5] Although plaintiff's integrated complaint includes a claim of retaliation which may also be reasonably related to a claim which was presented to the EEOC, plaintiff's integrated complaint does not allege that the discriminatory job assignments, intentional humiliation, demeaning work assignments and denial of contractual benefits were inflicted in retaliation for his failure to promote claim.

claims. Accordingly, it is recommended that defendant's motion to dismiss these claims be **GRANTED**.

**Proposed 42 U.S.C. § 1981 Claim**

Plaintiff asserts that he should be permitted to amend his complaint to add a cause of action pursuant to 42 U.S.C. § 1981 because this claim arises from the same conduct alleged in the original complaint. Dkt. #14, pp.7-8. Plaintiff argues that this claim is timely because it relates back to the filing of the original complaint on May 15, 2006. Dkt. #14, p.8.

Defendant responds that because equitable tolling does not apply, the only failure to promote claim which would be actionable pursuant to 42 U.S.C. § 1981 would be the claim relating to the promotion which occurred on September 25, 2003. Dkt. #19, p.5.

As an initial matter, the Court notes that because the Court has declined to resolve the statute of limitations defense in the context of defendant's motion to dismiss, it is recommended that plaintiff's motion for leave to file a second amended complaint (Dkt. #13), asserting a cause of action pursuant to 42 U.S.C. § 1981 with respect to each of the promotions at issue be **GRANTED** and that the statute of limitations defense with respect to these claims be resolved in a subsequent motion for summary judgment following discovery.

## CONCLUSION

Based on the foregoing, it is recommended that the defendant's motion to dismiss (Dkt. #6), be **GRANTED** with respect to plaintiff's allegations of discrimination in

job assignments, intentional humiliation and demeaning work area assignments and denial of contractual benefits and **DENIED** without prejudice with respect to plaintiff's allegations of failure to promote.  It is also recommended that plaintiff's motion for leave to file an amended complaint (Dkt. #13) be **GRANTED**.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Order and a copy of the Report and Recommendation to the plaintiff and the attorney for the defendant.

**SO ORDERED.**

DATED:        Buffalo, New York
              September 5, 2008

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**